AUSA: Samantha Briggs

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>BRIAN GARRIO,<br><br>Defendant. | **SEALED COMPLAINT** 26mj421<br><br>Violation of 18 U.S.C. §§ 115(a)(1)(B) and 875(c)<br><br>COUNTY OF OFFENSE: WESTCHESTER |

SOUTHERN DISTRICT OF NEW YORK, ss.:

VINCENT McLIVERTY, being duly sworn, deposes and says that he is a Deputy United States Marshal with the United States Marshals Service ("USMS"), and charges as follows:

**COUNT ONE**
**(Threating a Federal Law Enforcement Official)**

1. On or about December 12, 2025, in the Southern District of New York and elsewhere, BRIAN GARRIO, the defendant, did threaten to assault, kidnap, and murder a Federal law enforcement officer, with intent to impede, intimidate, and interfere with such law enforcement officer while engaged in the performance of official duties, and with intent to retaliate against such law enforcement officer on account of the performance of official duties, to wit, on or about December 11, 2025, and December 12, 2025, GARRIO sent text messages to his attorney using a cell phone that he knew to be monitored by a United States Probation Officer Specialist in which GARRIO threatened to murder and otherwise harm the United States Probation Officer Specialist.

(Title 18, United States Code, Section 115(a)(1)(B).)

**COUNT TWO**
**(Threatening Interstate Communications)**

2. On or about December 12, 2025, in the Southern District of New York and elsewhere, BRIAN GARRIO, the defendant, knowingly transmitted in interstate and foreign commerce a communication containing a threat to injure the person of another, to wit, GARRIO sent text messages to his attorney using a cell phone that he knew to be monitored by a United States Probation Officer Specialist in which GARRIO threatened to murder and otherwise harm the United States Probation Officer Specialist.

(Title 18, United States Code, Sections 875(c).)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

1. I am a Deputy United States Marshal with the USMS and I have been personally involved in the investigation of this matter. This affidavit is based upon my personal participation

in the investigation of this matter, as well as on my conversations with other law enforcement officers and my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all of the facts I have learned during the investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

2. Based on my review of documents and reports, including from the United States Probation Office for the Southern District of New York ("USPO") and the Federal Bureau of Prisons ("BOP"), and my discussion with other law enforcement officers, I have learned, among other things, the following:

a. BRIAN GARRIO, the defendant, was convicted in the United States District Court for the Southern District of New York, No. 21 Cr. 419, of stalking in violation of 18 U.S.C. §§ 2261A(2)(B) and 2, for making threatening, harassing, and intimidating online posts to social media against a Special Agent of the Federal Bureau of Investigation. In connection with that conviction, the assigned United States District Judge ("Judge-1") sentenced GARRIO to a term of 51 months' imprisonment, to be followed by a three-year term of supervised release, with special conditions of supervision that included (i) participating in an outpatient mental health treatment program approved by the USPO, and (ii) permitting the USPO to install "any application or software that allows it to survey and/or monitor all activity on any computer(s), automated service(s), or connected devices [used] during the term of supervision and that can access the Internet." The judgment was entered on or about October 28, 2022.

b. On or about January 29, 2025, GARRIO was released from the custody of the BOP and his term of supervised release commenced. A United States Probation Officer Specialist with the USPO in White Plains, New York ("Victim-1"), was assigned to supervise GARRIO. Following his release, GARRIO resided in an apartment located in the Bronx, New York.

c. In connection with GARRIO's supervised release, the USPO installed software on GARRIO's cell phone to allow Victim-1 to monitor all of GARRIO's activity, including text messaging.

d. GARRIO was thereafter warned on a number of occasions by Judge-1 and GARRIO's attorney ("Attorney-1") not to communicate with Attorney-1 using text messaging. On or about October 17, 2025, Attorney-1 reported in a letter to the Court: "[GARRIO] is able to communicate with counsel by text and email, but [Victim-1] informs me that he believes he is required to review those communications despite my request that they should be off-limits as they are privileged. Consequently, I have advised my client that confidential matters should be discussed by phone or in person."

e. On or about July 17, 2025 and July 18, 2025, GARRIO sent a series of text messages and made multiple phone calls to his USPO-assigned mental health clinician ("Doctor-1") that contained multiple threats of violence against Doctor-1. On or about July 24, 2025, Victim-1 submitted a Violation of Supervised Release petition setting forth two violation specifications based on this conduct. On August 14, 2025, Victim-1 submitted an Amended Violation of Supervised Release petition setting forth three violation specifications.

f. On October 14, 2025, GARRIO admitted to all three specifications in the Amended Violation of Supervised Release petition. Judge-1 revoked GARRIO's supervised release, sentenced GARRIO to a two-month term of imprisonment and a two-year term of supervised release, and ordered GARRIO to self-surrender on January 2, 2026. The judgment was entered on December 9, 2025.

g. On or about December 11, 2025 and December 12, 2025, GARRIO sent a series of text messages to Attorney-1, using the cell phone monitored by Victim-1, concerning Victim-1, the Assistant United States Attorney that prosecuted GARRIO in connection with the conduct described above ("AUSA-1"), and GARRIO's second USPO-approved mental health clinician ("Doctor-2"), including the following:

i. On or about December 11, 2025, at 4:24 a.m., GARRIO wrote: "When I get out in March I will not be compliant with their ankle tracker. Then we can ask to trade jail time for probation time. These cunts don't help anyone. And they need to wipe their shit off their mouth."

ii. On or about December 11, 2025, at 5:15 a.m., GARRIO wrote: "And I hope one of [AUSA-1's children] develop some type of problems in their life. Then maybe [AUSA-1] won't be so narrow-minded. Then again, I can't imagine [AUSA-1] being that decent of a parent."

iii. On or about December 11, 2025, at 5:19 a.m., GARRIO wrote: "When [Doctor-2's] face is a river of blood, I will say something about that sentencing for sure. It's probation that made me do it. They help me so much."

iv. On or about December 12, 2025, at 4:50 a.m., GARRIO wrote: "Just think about how much better the world would be if about 1300 dollars of taxpayers hard earned cash didn't go to piece of fucking shit probation officers. ""WE'RE JUST HERE TO HELP"" Then he tells the judge to lock me back up for five months. He's a fucking cunt. ***He on my list now*** for taking time away from me and my Grandmother. Making me wait until ten to leave and having to leave early. ***Fucking body that mother fucker. Zip it up.***" (emphasis added).

v. On or about December 12, 2025, at 11:26 a.m., GARRIO wrote: "***They need a visit from John Fuckn Wick.***[1] ***They're worse than detectives. I can wholeheartedly endorse the breed of Austrians. Glock 34 and 26 with custom porting and flared magwell.***" (emphasis added).

h. On or about December 12, 2025, Victim-1 issued a report detailing the above-described conduct. On or about December 16, 2025, Judge-1 revoked GARRIO's bail and remanded GARRIO to the custody of the BOP.

i. Following the revocation of GARRIO's bail, he has been incarcerated at the Metropolitan Detention Center ("MDC") in Brooklyn, New York. Between on or about

[1] I am aware that John Wick is an assassin and title character in a film series of the same name. *See* https://en.wikipedia.org/wiki/John_Wick.

December 17, 2025 and February 2, 2026, GARRIO made several dozen calls using the MDC's recorded phone lines, many of which contained threats of violence against Victim-1. For example:

i. On or about December 20, 2025, at approximately 3:03 p.m., GARRIO said: "I am done with them . . . I am going back to jail to trade off probation time when I get out, you understand? . . . If I have to assault a probation officer . . . . "

ii. On or about December 21, 2025, at approximately 12:04 p.m., GARRIO said: "Even though I have a good lawyer, this lawyer, he's got diarrhea of the mouth syndrome, he's a bullshit artist, just like the probation cop."

iii. On or about December 21, 2025, at approximately 6:18 p.m., GARRIO said: "I just need to talk to the fucking lawyer, because what are they doing, they're gonna wait until I get out and slap a second round of violations on me and then try to have me locked up again? You know? If that's the case, I'm going off on 'em, and I'm not gonna put the thing on my leg, and I'm gonna tell 'em just kill the probation."

iv. On or about January 1, 2026, at approximately 1:07 p.m., GARRIO said when he "get[s] out," "they wanna put the tracker back on me, on my leg, for another three months, and they wanna do this spyware shit on the phone for another year, right? But then they also wanna force me with the shrink bullshit. You know, they just never stop fucking with me. So I'm saying if I can't handle it when I'm out there, and I get mad at them, right, or they're giving me an even harder time when they come by the apartment, I'm just gonna – I'm just not gonna to cooperate with them and go back and get to see the judge. And then my lawyer will tell 'em, listen, Brian's not gonna cooperate with your fucking probation, so just give him the jail time and give him his freedom after so this can all finally come to an end."

3. On or about February 9, 2026, I interviewed an inmate at MDC who had contact with GARRIO while incarcerated ("Inmate-1"), and who reported the following, in substance and in part:

a. On numerous occasions, BRIAN GARRIO, the defendant, told Inmate-1 that he wanted to kill Judge-1, Victim-1, and AUSA-1. GARRIO specifically told Inmate-1 that, upon his release, he intended to acquire a firearm; steal a car; wait outside of the federal courthouse in White Plains, New York for Judge-1, Victim-1, and/or AUSA-1 to exit; shoot Judge-1, Victim-1, and/or AUSA-1; and flee to New Mexico using "back roads."

b. GARRIO told Inmate-1 that he planned to shoot Judge-1, Victim-1, and/or AUSA-1 three or four times because if a shooter fires one shot, the shot attracts attention from bystanders, whereas if a shooter fires three or four shots, the shots will cause bystanders to flee.

c. GARRIO told Inmate-1 that he would not "get caught" like Luigi Mangione.

d. GARRIO asked Inmate-1 to help him acquire a firearm.

e. GARRIO informed Inmate-1 that he knows Victim-1's name, where Victim-1 lives, and the color of the car Victim-1 drives.

f. GARRIO informed Inmate-1 that he knows how many children AUSA-1 has and was attempting to learn what school they attend. GARRIO also informed Inmate-1 that he once saw AUSA-1 in a hallway of the federal courthouse in White Plains, New York and knows that AUSA-1 does not travel with protection.

g. GARRIO informed Inmate-1 that he wanted to "take [Judge-1's] brains out and fry them and eat them like Hannibal Lecter."

h. GARRIO told Inmate-1 that he was attempting to get information about Judge-1 and AUSA-1's addresses and that he had a friend who was a police officer that could look up such information for him.

4. Based on information obtained from the USPO, I am aware that it contracts with IPPC Technologies for the software that was used to monitor the cell phone of BRIAN GARRIO, the defendant, and that USPO has been informed by an IPPC Technologies employee that IPPC Technologies' servers are located in Virginia, with backup servers located in Ohio.

WHEREFORE, I respectfully request that a warrant be issued for the arrest of BRIAN GARRIO, the defendant, and that he be arrested, and imprisoned or bailed, as the case may be.

/s/ Vincent McLiverty (by AEK, with permission)

VINCENT McLIVERTY
Deputy United States Marshal
United States Marshals Service

Sworn to me through the transmission of this Affidavit by reliable electronic means, pursuant to Federal Rules of Criminal Procedure 41(d)(3) and 4.1, this 11th day of February, 2026 **[by MS Teams]**.

Andrew Krause

THE HONORABLE ANDREW KRAUSE
United States Magistrate Judge
Southern District of New York